# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER LEE ALLEN, | CASE NO.   1:10-cv-1613-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFFS'S COMPLAINT FOR FAILURE TO STATE A CLAIM |
| v. | (ECF No. 1) |
| J.D. KLARICH, et al., | AMENDED COMPLAINT DUE NOVEMBER 28, 2011 |
| Defendants. | |

_____/

## SCREENING ORDER

Plaintiff Carter Lee Allen ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff has consented to the Magistrate Judge handling all matters in this action.  (ECF No. 4.)

Plaintiff initiated this action on August 23, 2010.  (Compl., ECF No. 1.)  No other parties have appeared in this action.  Plaintiff's Complaint is now before the Court for screening.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not.  Id. at 1949-50.

## II.   **SUMMARY OF COMPLAINT**

Plaintiff is a prisoner currently housed at California State Prison in Solano, California. (Compl. at 1.) Plaintiff claims the following Defendants denied him adequate medical care: (1) J.D. Klarich, M.D.; (2) Doe, Associate Warden; (3) R. Perkinson, M.D.; (4) Dr. Wong, M.D.; (5) J. Nuebarth, M.D.; (6) R. Cerona, R.N.; (7) Stephanie Doe, U.M.N.; (8) Jane Leach, LVN; (9) Ketsana Vilagsana, M.D.; and (10) J. Parks, U.M.N.[1]

Plaintiff seeks general, special, and punitive damages. Plaintiff also seeks attorney's fees and costs.

Plaintiff alleges as follows:

Plaintiff has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at all times relevant to this action. (Id. at 3.) Plaintiff was housed at Pleasant Valley State Prison ("PVSP") from September 27, 2001 to December 2008. (Id.) Plaintiff relied on medical care providers at CDCR at all times during his incarceration.

At all times relevant to this action, Defendants were employed as follows:

Defendant Klarich was the Chief Medical Officer ("CMO") at PVSP. (Id.) As CMO, Defendant Klarich was responsible for Plaintiff's medical care, and his general responsibilities included the supervision, direction, and proper training of medical staff at PVSP. (Id.) Defendant Doe was employed as the Medical Health Care Services Associate Warden of PVSP. (Id. at 4.) Defendant Doe was also responsible for Plaintiff's medical care. (Id.) Defendants Perkinson and Wong were employed as surgeons at PVSP. (Id. at 4-5.) Defendant Neubarth was employed as a physician at PVSP. (Id. at 5.) Defendant

---

[1] The Court will refer to Defendant Doe, Associate Warden as "Defendant Doe". The Court will refer to Defendant Stephanie Doe, U.M.N. as "Defendant Stephanie".

1   Stephanie Doe was employed as a utilization management nurse at PVSP.  (Id. at 5.)

2   Defendant Leach was employed as a Licensed Vocational Nurse at PVSP.  (Id. at 6.)

3   Defendant Vilagsana was a medical doctor responsible for the medical care of Plaintiff at

4   PVSP.  (Id.)  Plaintiff Parks was employed by CDCR at PVSP.  (Id.)

5

6        From September 27, 2001 to December 2008, Defendants have been aware that

7   PVSP's medical staff's scheduling and cancellation of Plaintiff's medical appointments,

8   transfers, and unreasonable delay in treatment resulted in inadequate care of Plaintiff's

9   medical needs and damage to Plaintiff's health. (Compl. at 8-9.) Plaintiff sought treatment

10  for glaucoma, diagnosed in its early stages, in order to prevent blindness in his left-eye.

11  (Id. at 8.)  Plaintiff also sought proper follow-up care after having surgery on his left-eye.

12  (Id.)

13

14       The chronological history of the treatment Plaintiff received for his left-eye is as

15  follows:

16       Defendant Perksinson performed cataract surgery on Plaintiff's left-eye on

17  September 27, 2001.  Since approximately July 2002, Plaintiff has sought follow-up

18  medical care. (Compl. at 8.)

19

20       On April 2, 2002, Plaintiff experienced eye irritation and was referred to an

21  opthamologist. (Compl. at 8.) On July 19, 2002, he visited Defendant Wong at the Golden

22  State Eye Center. (Id.) Defendant Wong discovered visual problems and glaucoma in his

23  left-eye and on December 2, 2002, performed laser surgery.  (Id.)  Defendant Wong

24  prescribed medication.  (Id.)  Plaintiff believes that all Defendants were aware of his

25  medical condition from July 19, 2002, onwards.  (Id.)

26

27       Plaintiff was admitted to the emergency room on May 22, 2003, with complications

in his left-eye, and Defendant Neubarth recommended treatment.  (Compl. at 9.)  From July 9, 2003 to February 1, 2005, Plaintiff "received" requests from physicians for necessary medications, consultations, and follow-up medical appointments. (Id.) On May 31, 2005, Plaintiff complained to PVSP's health care services that he was going blind in his left-eye and facing delays in seeing an opthamologist.  (Id.)

On September 16, 2005, Plaintiff saw a Doctor Yaplee who told Plaintiff that if he had seen him sooner, he could have saved Plaintiff's left-eye.[2]  (Compl. at 9.)  Plaintiff twice confronted LVN Stephens, on November 22 and December 30, 2005, regarding his need for an optometry appointment.  (Id.)  After the first confrontation, LVN Stephens contacted Defendant Cerona, who told LVN Stephens that it could be three to six months before Plaintiff could have an optometrist appointment.  (Id.)  The second confrontation resulted in Plaintiff being scheduled for an optometry appointment in the first two weeks of January 2006.  (Id. at 9-10.)

Plaintiff was again diagnosed with glaucoma in his left-eye on January 6, 2006. (Compl. at 10.)  On January 18, 2006, LVN Stephens spoke with Defendant Stephanie regarding results and recommendations from "O TMR".  (Id.)  Defendant Stephanie said she did not have results because Defendant Cerona had not attempted to contact her supervisor.  (Id.)  On February 8, 2006, LVN Stephens was informed by Defendant Leach that Defendant Leach did not have any orders for Plaintiff, but that Defendant Leach did have orders that required the CMO's signature.  (Id.)

On April 5 and June 9, 2006, urgent requests for health care services for Plaintiff

---

[2] Plaintiff alleges that he only had one good eye remaining as of sometime around December 4, 2006.  (Compl. at 11.)

were submitted.  (Compl. at. 10.)  Plaintiff saw Doctor Yaplee on June 15, 2006.  (Id.)

On August 23, 2006, Defendant Vilagsana submitted a request for health care services, because Plaintiff suffered from "I.O.P." and needed follow-up.  (Compl. at 10.) Defendant Vilagsana recommended Plaintiff see Doctor Yaplee, which he did on November 9, 2006.  (Id. at 10-11.)  On December 4, 2006, Defendant Vilagsana again requested health care services for Plaintiff.  (Id. at 11.)  Plaintiff alleges that at this point he only had sight in his right-eye.  (Id.)

On February 1, 2007, Plaintiff filed an inmate administrate appeal within PVSP for his overdue eye appointment.  (Compl. at 11.)  Plaintiff received a response on February 8, 2007; it informed him that he was scheduled for an opthamology appointment in the near future.  (Id.)  Following Plaintiff's consultation with Defendant Yaplee, on March 9, 2007, a physician's order for medication was sent to the pharmacy along with a recommendation for an opthamology follow-up visit.  (Id.)

On March 26, 2007, another physician's request for health care services was completed and forwarded to the Utilization Management Unit for off-site opthamology evaluation by Doctor Yaplee.  (Compl. at 11.)  On December 8, 2007, another physicians's request for health care services was signed by "ETA RN" of Doctor Vilagsana for urgent care and follow-up after surgery with Doctor Yaplee.  (Id.)

In summary, Plaintiff's Complaint undertakes to assert a claim for violation of his right to adequate medical care under the Eighth Amendment based on Defendants' long course of deliberate indifference to serious medical needs.  (Compl. at 13.)  Plaintiff claims that the failure to provide adequate medical care and the subsequent injuries he sustained from the care amounts to a violation of his constitutional rights.  (Id.)

III.   **ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).   Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere.   Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.   See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

A.   **Claims Against Defendants Klarich and Doe**

To state a claim for a constitutional violation under Section 1983, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).   The Supreme Court recently emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer.   Iqbal, 129 S.Ct. at 1937.   "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."   Id. at 1948.   Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct.   Therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

Plaintiff attributes no wrong to Defendants Klarich and Doe beyond alleging a deliberate indifference to the risks from lack of medical treatment and by approving the prison's policy on access to medical care.  Defendant Klarich cannot be held liable based solely on his or her position as CMO of PVSP.  Defendant Doe cannot be held liable solely based on his or her position as the Medical Health Care Services Associate Warden of PVSP.  Plaintiff cannot proceed against these Defendants unless he truthfully alleges how they *personally* violated or knowingly directed violation of his constitutional rights.  As noted, a claim based solely on their supervisory status as CMO and Medical Health Care Services Associate Warden respectively does not state a claim when Plaintiff's rights were, as alleged, violated by subordinate employees.  Plaintiff has not provided sufficient grounds to proceed against either of these two Defendants.

If Plaintiff chooses to file an amended complaint against these Defendants, he must allege how these Defendants personally violated or knowingly directed violation of his constitutional rights.

**B.** **Claims Against Defendants Perkinson, Wong, Neubarth, Stephanie, Cerona, Leach, and Vilagsana**

Plaintiff alleges that medical personnel Defendants Perkinson, Wong, Neubarth, Stephanie, Cerona, Leach, and Vilagsana violated Plaintiff's Eighth Amendment rights by depriving Plaintiff of access to adequate medical care for his glaucoma and follow-up care after Plaintiff's 2001 surgery.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285

(1976)).  The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Plaintiff has sufficiently pled a serious medical condition by alleging he has glaucoma which if not properly treated after surgery could potentially cause significant injury.  However, Plaintiff has not shown that Defendants Perkinson, Wong, Neubarth, Stephanie, Leach, and Vilagsana were deliberately indifferent to Plaintiff's medical needs.

To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Defendants Perkinson, Wong, Neubarth, Stephanie, Leach, and Vilagsana are medical personnel and would have been aware of the risk faced by Plaintiff if his glaucoma

-9-

was not treated and aware of whether he had adequate medical follow-up care after his 2001 surgery.   However, he has not adequately pled that these Defendants were deliberately indifferent to the risk of harm.  Plaintiff instead provides a chronological history of all of treatment he received for his left-eye at PVSP from 2001 to 2008.  This history shows the following: Defendant Perksinson performed surgery in 2001.  (Compl. at 8.) Defendant Wong saw Plaintiff twice in 2002, diagnosed him with glaucoma, performed laser surgery, and prescribed medication.  (Id. at 8.)  Defendant Neubarth recommended treatment for Plaintiff after he was admitted to the emergency room in 2003.  (Id. at 9.) Defendant Stephanie told LVN Stephens that she did not have medical results for Plaintiff at some point in 2006.  (Id. at 10.)  Defendant Cerona told LVN Stephens that it could be a few months before Plaintiff could have an optometrist appointment; Defendant Cerona also failed to contact Defendant Stephanie's supervisor to allow her to get Plaintiff's medical results and recommendations.  (Id. at 9.)  Defendant Leach told LVN Stephens that he did not have any orders for Plaintiff at some point in 2006.  (Id. at 10.)  Defendant Vilagsana requested treatment for Plaintiff four times, three times in 2006 and once in 2007.  (Id. at 11.)

Thus, not only has Plaintiff neglected to allege how any of these Defendants denied him adequate medical care, he instead documents how they did undertake to actually *treat* his serious medical condition over time.

Nothing in the Complaint indicates that these Defendants acted with deliberate indifference.  Without same, there is no basis for proceeding on a claim that they violated Plaintiff's Eighth Amendment right to adequate medical care.  At most, the pleading suggests that Plaintiff is frustrated and/or dissatisfied with his course of treatment.  That

-10-

suggests only a difference of opinion as to the method of treatment.  Mere disagreement does not create a constitutional violation.  "[A] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.'"  Turner v. Greenman, 2011 WL 1343120, *3 (E.D. Cal. Apr. 7, 2011) (quoting Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  If Plaintiff chooses to file an amended complaint, he must properly allege facts showing if and how these Defendants acted in a way that demonstrates deliberate indifference.

**C.    Claims Against Defendant Parks**

Under Section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949–50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

The statute clearly requires that there be an actual connection or link between the actions of the defendants and the unconstitutional deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978).  Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Iqbal, 129 S.Ct. at 1948.  Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions.  Id. at 1948.  In other words, to state a claim for relief under Section 1983, Plaintiff must link each named defendant with some affirmative act or

omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff does not mention how Defendant Parks participated in the alleged violation of Plaintiff's rights.  He or she is not mentioned at all in the body of the Complaint, and as pled, Plaintiff's Complaint does not state a claim against Defendant Parks.

## IV.    CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants or claims.  Plaintiff should focus the amended complaint on claims and defendants relating solely to issues arising out of the incidents discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original

complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.     Plaintiff's Complaint is dismissed for failure to state a claim, with leave to file an amended complaint by November 28, 2011;

2.     Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:10-cv-1613-MJS (PC); and

3.     If Plaintiff fails to comply with this Order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:      October 30, 2011              /s/ *Michael J. Seng*
ci4d6                                                UNITED STATES MAGISTRATE JUDGE

-13-