UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER LEE ALLEN,<br><br>                    Plaintiff,<br><br>     v.<br><br>J.D. KLARICH, et al.,<br><br>                    Defendants.<br>_____/ | CASE NO.   1:10-cv-1613-MJS (PC)<br><br>ORDER DISMISSING PLAINTIFFS'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 10)<br><br>CLERK SHALL CLOSE CASE |

Plaintiff Carter Lee Allen ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff has consented to the Magistrate Judge handling all matters in this action. (ECF No. 4.)  No other parties have appeared in this action.

Plaintiff initiated this action on August 23, 2010.  (Compl., ECF No. 1.)  The Court dismissed Plaintiff's original Complaint for failure to state a claim, but gave Plaintiff leave to amend.  Plaintiff filed a First Amended Complaint on December 2, 2011, and that First Amended Complaint is now before the Court for screening.

Plaintiff again fails to state a claim.  His action shall be dismissed.

-1-

I.      **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-5.

II.     **SUMMARY OF AMENDED COMPLAINT**

Plaintiff's Amended Complaint consists of several sections that seem to the Court

to be unrelated to one another.  It the first section Plaintiff inserts the description of defendants and the "statement of claim" found in his original Complaint, then a new two page "statement of the claim", then the Court's entire summary of his original Complaint from its first Screening Order, and a section labeled "Claim 1" and "Claim 2" (which appear to be, combined, a claim for inadequate medical care under the Eighth Amendment). Plaintiff then includes an entirely separate document entitled "Memorandum of Points and Authorities" that contains another "statement of the claim", a set of medical definitions, an "argument", a summary, a request for damages, a claim for relief, and a prayer for relief. These and others factors  leave the  Amended Complaint less than entirely comprehensible.  The  Court will summarize it as best it can:

### A.    Plaintiff's Status; Defendants

Plaintiff has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at all times relevant to this action. (Am. Compl. at 4.)  Plaintiff is currently housed at California State Prison in Solano, California, but was in Pleasant Valley State Prison ("PVSP") at all times relevant to this action.  (Id.)

Plaintiff claims the following Defendants denied him adequate medical care: (1) J.D. Klarich, M.D.; (2) Doe, Associate Warden; (3) R. Perkinson, M.D.; (4) Dr. Wong, M.D.; (5) J. Nuebarth, M.D.; (6) R. Cerona, R.N.; (7) Stephanie Doe, U.M.N; (8) Jane Leach, LVN; (9) Ketsana Vilagsana, M.D.; and (10) J. Parks, U.M.N.[1]

At all times relevant, Defendants were employed as follows:

Defendant Klarich was the Chief Medical Officer ("CMO") at PVSP. (Am. Compl.

---

[1] The Court will refer to Defendant Doe, Associate Warden as "Defendant Doe".  The Court will refer to Defendant Stephanie Doe, U.M.N. as "Defendant Stephanie".

-3-

at 4.) As CMO, Defendant Klarich was responsible for Plaintiff's medical care, and his general responsibilities included the supervision, direction, and proper training of medical staff at PVSP. (Id.) Defendant Doe was employed as the Medical Health Care Services Associate Warden of PVSP. (Id. at 5.) Defendant Doe was also responsible for Plaintiff's medical care. (Id.) Defendants Perkinson and Wong were employed as surgeons at PVSP. (Id. at 5-6.) Defendant Neubarth was employed as a physician at PVSP. (Id. at 6.) Defendant Stephanie Doe was employed as a utilization management nurse at PVSP. (Id. at 6.) Defendant Leach was employed as a Licensed Vocational Nurse ("LVN") at PVSP. (Id. at 7.) Defendant Vilagsana was a medical doctor responsible for the medical care of Plaintiff at PVSP. (Id.) Plaintiff Parks was employed by CDCR at PVSP. (Id.)

**B.     Factual Background and Summary of Factual Background from the Original Screening Order**

Plaintiff repeats the same chronological treatment history found in his original Complaint. (Am. Compl. at 8-12.) He adds a single page "Statement of the Claim" and the Court's original summary of his initial factual allegations. (Id. at 13-17.)

From the foregoing, it appears Plaintiff received the following treatment for his left-eye:

Plaintiff sought treatment for glaucoma, diagnosed in its early stages, in order to prevent blindness in his left-eye. (Am. Compl. at 8.) Plaintiff also sought proper follow-up care after left-eye cataract surgery by Defendant Perksinson September 27, 2001. (Id.) Since approximately July 2002, Plaintiff has sought follow-up treatment. (Id.)

On April 2, 2002, Plaintiff experienced eye irritation and was referred to an opthamologist. (Am. Compl. at 8.) On July 19, 2002, he visited Defendant Wong at the

Golden State Eye Center. (Id.) Defendant Wong discovered visual problems and glaucoma in Plaintiff's left-eye and on December 2, 2002, performed laser surgery. (Id.) Defendant Wong prescribed medication. (Id.) Plaintiff believes that all Defendants were aware of his medical condition from July 19, 2002, onwards. (Id.)

Plaintiff was admitted to the emergency room on May 22, 2003, with complications in his left-eye, and Defendant Neubarth recommended treatment. (Am. Compl. at 9.) From July 9, 2003 to February 1, 2005, Plaintiff "received" requests from physicians for necessary medications, consultations, and follow-up medical appointments. (Id.) On May 31, 2005, Plaintiff complained to PVSP's health care services that he was going blind in his left-eye and facing delays in seeing an opthamologist. (Id.)

On September 16, 2005, Plaintiff saw a Doctor Yaplee who told Plaintiff that if he had seen him sooner, he could have saved Plaintiff's left-eye.[2] (Am. Compl. at 9.) Plaintiff twice confronted LVN Stephens, on November 22 and December 30, 2005, regarding his need for an optometry appointment. (Id.) After the first confrontation, LVN Stephens contacted Defendant Cerona, who told LVN Stephens that it could be three to six months before Plaintiff could have an optometrist appointment. (Id.) The second confrontation resulted in Plaintiff being scheduled for an optometry appointment in the first two weeks of January 2006. (Id. at 9-10.)

Plaintiff was again diagnosed with glaucoma in his left-eye on January 6, 2006. (Am. Compl. at 10.) On January 18, 2006, LVN Stephens spoke with Defendant Stephanie regarding results and recommendations from "O TMR". (Id.) Defendant Stephanie said

---

[2] Plaintiff alleges that he only had one good eye remaining as of sometime around December 4, 2006. (Am. Compl. at 11.)

she did not have results because Defendant Cerona had not attempted to contact her supervisor. (Id.) On February 8, 2006, LVN Stephens was informed by Defendant Leach that Defendant Leach did not have any orders for Plaintiff, but that Defendant Leach did have orders that required the CMO's signature. (Id.)

On April 5 and June 9, 2006, urgent requests for health care services for Plaintiff were submitted. (Am. Compl. at. 10.) Plaintiff saw Doctor Yaplee on June 15, 2006. (Id.)

On August 23, 2006, Defendant Vilagsana submitted a request for health care services, because Plaintiff suffered from "I.O.P." (intraoccular pressure) and needed follow-up. (Am. Compl. at 10.) Defendant Vilagsana recommended Plaintiff see Doctor Yaplee, which he did on November 9, 2006. (Id. at 10-11.) On December 4, 2006, Defendant Vilagsana again requested health care services for Plaintiff. (Id. at 11.) Plaintiff alleges that at this point he only had sight in his right-eye. (Id.)

On February 1, 2007, Plaintiff filed an inmate administrative appeal within PVSP for his overdue eye appointment. (Am. Compl. at 11.) Plaintiff received a response on February 8, 2007; it informed him that he was scheduled for an opthamology appointment in the near future. (Id.) Following Plaintiff's consultation with Doctor Yaplee, on March 9, 2007, a physician's order for medication was sent to the pharmacy along with a recommendation for an opthamology follow-up visit. (Id.)

On March 26, 2007, another physician's request for health care services was completed and forwarded to the Utilization Management Unit for off-site opthamology evaluation by Doctor Yaplee. (Am. Compl. at 11.) On December 8, 2007, another physicians's request for health care services was signed by "ETA RN" of Doctor Vilagsana for urgent care and follow-up after surgery with Doctor Yaplee. (Id.)

From September 27, 2001 to December 2008, Defendants have been aware that PVSP's medical staff's scheduling and cancellation of Plaintiff's medical appointments, transfers, and unreasonable delays in treatment resulted in inadequate care of Plaintiff's medical needs and damage to Plaintiff's health. (Am. Compl. at 8-9.)

In the new "Statement of the Claim", Plaintiff essentially repeats his allegations. Plaintiff suffered from inadequate follow-up care after his September 27, 2001 eye surgery. (Am. Compl. at 13.) Medical personnel at PVSP failed to respond to notes regarding Plaintiff's urgent need for medical care and follow-up. (Id.) If medical personal had responded to these notes, the vision in Plaintiff's left-eye could have been saved. (Id.) Medical personnel failed to remove the sutures from Plaintiff's 2001 operation in a timely fashion, causing unnecessary pain and suffering. (Id.)

### C. Plaintiff's "Claims"

Plaintiff includes a section labeled "Claim 1" and "Claim 2", however, these sections appear to make up a single claim for inadequate medical care under the Eighth Amendment. (Am. Compl. at 19-25.) The claim consists of the following allegations:

Prisons commonly ignore specific instructions for post-surgical care and do not follow these instructions in a timely manner. (Am. Compl. at 19.) Plaintiff's medical file is full of requests marked "urgent" by CDCR doctors to the Chief Medical Officer who oversees the Medical Authorization Review Committee. (Id.) This kind of indifference is prevailing in "California Department's own policy and procedure." (Id.) This behavior is the same behavior that a federal panel sought to change, and make the prison medical system more responsive to inmates' medical needs. (Id. at 20.)

Plaintiff specifically alleges that after his surgery on his left-eye in 2001, the wrong

-7-

lens was placed into his left-eye and caused leakage. (Am. Compl. at 22.) None of his doctors discovered this mistake until 2008, when Doctor Yaplee. (Id.) This mistake resulted in blindness in Plaintiff's left-eye. (Id. at 23.) Plaintiff also alleges that despite a 2006 note in his medical file that he had an urgent condition, surgery was not performed until fourteen months later. (Id. at 22.) This was deliberate indifference perpetrated by Defendant Vilagsana and Doctor Yaplee.[3] (Id.) Plaintiff also was subjected to deliberate indifference at the hands of physicians who treated him from 2001 to 2008. (Id. at 24.) Plaintiff's seven years of delay in treatment constitutes deliberate indifference. (Id.) All of the named Defendants who participated in Plaintiff's treatment are at fault for the cover-up. (Id.) These Defendants were part of a chain of care and had a fiduciary relationship with Plaintiff. (Id. at 25.)

### D. "First Amended Complaint Memorandum of Points and Authorities"

In this section, Plaintiff provides another Statement of the Claim, and reiterates his statement that he received surgery on his left-eye in 2001 and that he suffered from inadequate medical care due to delays in his follow-up treatment. (Id. at 28.) Plaintiff submits additional facts to the Court to emphasize his argument that he was blinded in his left-eye as a result of delays in his treatment. (Id.) Plaintiff informs the Court of various medical terms, including cataract, glaucoma, and pseudophakia. (Id. at 29.) Plaintiff cites to the California Code of Regulations and a definition of the term "medical necessary". (Id.) Plaintiff makes the "new" allegation that there was medical indifference as a result of a delay in the removal of the sutures placed in his eye in connection with the 2001 surgery.

---

[3] Although it appears that Plaintiff might wish to allege a claim against Doctor Yaplee, this individual is not named as a defendant in Plaintiff's original or amended complaints.

(Id.) He then refers to various forms in his medical history marked "urgent" and discusses how the follow-ups were not fast enough. (Id.) As a "Claim for Relief", Plaintiff claims inadequate medical care under the Eighth Amendment. (Id. at 33.) He does not refer to any specific defendants in this section.

Plaintiff asks for exemplary and punitive damages. (Am. Compl. at 32.) Plaintiff also asks for general damages, special damages, reasonable attorney's fees, cost of suit, and any additional relief that the Court determines proper. (Id. at 34.)

### III. ANALYSIS

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

### A. Claims Against Defendants Klarich and Doe

As the Court previously informed Plaintiff, to state a claim for a constitutional violation under Section 1983, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

2002). The Supreme Court recently emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S. Ct. at 1937. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct. Therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

In his Amended Complaint, Plaintiff again attributes no wrong to Defendants Klarich and Doe beyond alleging a deliberate indifference to the risks of poor medical treatment and by approving the prison's policy on access to medical care.

Defendant Klarich cannot be held liable based solely on his or her position as CMO of PVSP, nor can Defendant Doe cannot be held liable solely based on his or her position as the Medical Health Care Services Associate Warden of PVSP. Plaintiff cannot proceed against these Defendants unless he truthfully alleges how they *personally* violated or knowingly directed violation of his constitutional rights. As noted, a claim based solely on supervisory status does not state a claim for violation of Plaintiff's rights by subordinate employees. Plaintiff has not identified any basis upon which he might proceed against either of these two Defendants.

**B.     Claims Against Defendants Perkinson, Wong, Neubarth, Stephanie, Cerona, Leach, and Vilagsana**

Plaintiff alleges that medical personnel Defendants Perkinson, Wong, Neubarth, Stephanie, Cerona, Leach, and Vilagsana violated Plaintiff's Eighth Amendment rights by depriving Plaintiff of access to adequate medical care for his glaucoma and follow-up after

-10-

surgery in 2001.

As the Court previously informed Plaintiff, "to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Plaintiff has pled a serious medical condition in glaucoma which if not properly treated and followed up could potentially cause significant injury. Further, taking Plaintiff's allegations at face value, they describe what may well be negligent medical care, i.e., medical malpractice, on the part of at least some of the medical personnel treating him.

However, Plaintiff has not included allegations supporting a claim that Defendants Perkinson, Wong, Neubarth, Stephanie, Leach, and Vilagsana were deliberately indifferent to Plaintiff's medical needs. To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that

person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Defendants Perkinson, Wong, Neubarth, Stephanie, Leach, and Vilagsana are medical personnel who should have been aware of the risk to Plaintiff if his glaucoma was not treated and, presumably, each of them was in a position to know if he received adequate medical care after his 2001 surgery. However, his allegations do no more than suggest negligence on their part, not deliberate indifference. Plaintiff's complaint consists of a chronology of left-eye treatment at PVSP from 2001 to 2008 and broad allegations about how unnamed medical personnel did not adequately review his medical records and provide timely care. The only other new facts alleged are that sutures were left in after surgery, a fact not known to Plaintiff until he received his medical records in 2008. There is no basis upon which to conclude that this was medically inappropriate much less that it reflected deliberate indifference on the part of any on or more Defendants. Plaintiff also claims a coordinated effort by Defendants to act with deliberate indifference to Plaintiff's medical needs. He provides no allegations of supporting facts for such conclusory and apparently speculative claims.

In short, Plaintiff, in describing how Defendants undertook to actually treat his serious medical condition over time, has not alleged how any of them individually denied him adequate medical care or failed to follow-up on urgent medical requests.

Nothing in the Amended Complaint indicates that these Defendants acted with

deliberate indifference. Without same, there is no basis for proceeding on a claim that they violated Plaintiff's Eighth Amendment right to adequate medical care. At most, the pleading suggests that Plaintiff is frustrated and/or dissatisfied with his course of treatment and feels other methods were more medically appropriate. Such mere disagreement does not create a constitutional violation. "[A] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.'" Turner v. Greenman, 2011 WL 1343120, *3 (E.D. Cal. Apr. 7, 2011) (quoting Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Plaintiff has again failed to state a claim for inadequate medical care against Defendants Perkinson, Wong, Neubarth, Stephanie, Cerona, Leach, and Vilagsana.

### C.  Claims Against Defendant Parks

As the Court stated in its previous screening order, under Section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949–50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. There must be an actual connection or link between the actions of the defendants and the unconstitutional deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S. Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, Plaintiff must plead sufficient facts showing

that the official has violated the Constitution through his own individual actions. Id. at 1948. In other words, to state a claim for relief under Section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff does not mention how Defendant Parks participated in the alleged violation of Plaintiff's rights. He or she is not mentioned at all in the body of the Amended Complaint.

## IV.     DISMISSAL WITH PREJUDICE

For the reasons stated above, the Court finds that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and that leave to amend would be futile. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). As noted, Plaintiff's allegations suggest negligent medial care may have been provided to him by various medical practitioners at PVSP. Perhaps in other circumstances Plaintiff may have been able to bring a medical malpractice claim for such wrongs. However, he here seeks to pursue a claim that his right under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment has been violated by the provision of inadequate medical care. As noted, such a constitutional claim requires much more than a medical malpractice case and more than has been alleged in this case. Accordingly, the Court concludes that Plaintiff has not properly asserted a cognizable Eighth Amendment claim against any of the Defendants.[4]

---

[4] It may be that Plaintiff is undertaking to assert broader claims of systemic inadequacies in PVSP's medical care. Such claims are being addressed by the receiver in Plata v. Schwarzenegger, N.D. Cal. Case No. CV 01-1351, where Judge Henderson, United States District Judge for the Northern District of California, established a receivership to manage provision of medical care to California inmates. The receivership is in the process of bringing the level of medical care offered in California state prisons to a standard acceptable under the United States Constitution.

Plaintiff previously was advised of what would be necessary to assert such a claim. He was given leave to amend to try to cure the identified deficiencies in his original Complaint. He has tried but he has not succeeded. The court is satisfied, however, that he has set out all the facts known to him which might potentially support a claim. Since those facts as pled (and repled) here are not sufficient to support Plaintiff's claim, no useful purpose would be served in granting further leave to amend. Accordingly, this case will be dismissed with prejudice. This dismissal is subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Vittorio, No. 08-15620, 2011 WL 4436248, at *4 (9th Cir. Sept. 26, 2011). The Clerk shall close the case.

IT IS SO ORDERED.

Dated:   December 13, 2011           /s/ *Michael J. Seng*
ci4d6                                UNITED STATES MAGISTRATE JUDGE